UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES W. TINKER,
       Plaintiff,

vs.                                                           CIVIL NO. 2:08-CV-11675

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,       DISTRICT JUDGE NANCY G. EDMUNDS
                                                                  MAGISTRATE JUDGE. STEVEN D. PEPE
       Defendant

_____/

### Report and Recommendation

**I.   Background**

James Tinker brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED** and that Plaintiff's Motion for Summary Judgment be **GRANTED** with the requested remand for further administrative proceedings consistent with this Report and Recommendation.

    **A.   Procedural History**

Plaintiff filed an application for DIB on June 1, 2004, alleging a December 6, 2002, onset of disability due back, neck, kidney, and rib problems, hip replacements, and a head injury from a car accident leading to short term memory loss. (June 30, 2004, Disability Report, R. 45-46).

1

Plaintiff's claims were initially denied on September 9, 2004 (R. 32-36). He requested a hearing, which was held before Administrative Law Judge (ALJ) John L. Christensen on November 29, 2006 (R. 24-29, 121-43). Plaintiff was represented by Mikel E. Lupisella, who represents him in this case. Vocational Expert (VE) Melody L. Henry also testified. On January 19, 2007, the ALJ issued an opinion denying Plaintiff's application (R. 16-21). The Appeals Council denied Plaintiff's request for review on February 28, 2008 (R. 6-8).

### B.     Background Facts

#### 1.     Plaintiff's Background

Plaintiff was born on September 31, 1958, and was 44 years old on the alleged disability onset date (R. 42). He completed 12th grade (R. 50). Plaintiff's past relevant work experience was as an assembler at a automobile plant (R. 46, 66).

At the November 29, 2006, administrative hearing, Plaintiff testified that he has not worked since his automobile accident on December 6. 2002 (R. 130). Plaintiff spends most of his time at home (R. 132). Plaintiff's daily activities include watching television, caring for personal needs and preparing meals (R. 64-66). His two children do his grocery shopping. (R. 132). His son takes care of yard work, and he has a cleaning lady who does his housework (R. 132). Plaintiff stated that he can stand or walk for at most about 10 minutes before he needs to sit down (R. 133). If he tries to stand for longer than that, he is exhausted and suffers pain in his back, neck and kidney and must lay down afterward. Plaintiff testified that he buys half gallons of milk because a gallon is too heavy for him to lift (R. 133). During the day, Plaintiff lays down frequently because of the pain he experiences (R. 133).

He noted that he suffers from pain constantly (R. 130). As a result, he seldom sleeps (R.

130).  Medication only "dulls" the pain (R. 131).  Plaintiff does not experience any side effects from his pain medication (R. 131).  He testified, however, that he suffers memory loss that prevents him from working.  (R. 130-32).  Plaintiff has problems with forgetting things and concentrating "all the time" (R. 134).

### 2. **Medical Evidence**

Plaintiff apparently his an expressway overpass in December 2002 sustaining a closed head injury and resulting memory problems and was hospitalized for 24 days.  (R. 77) There are no hospital records related to that injury, but this is apparently not disputed with the ALJ finding plaintiff to be "status post closed head injury" R. 18).

On June 3, 2003, Plaintiff's treating chiropractic physician, Brian L. Grappin DC, completed an Attending Physician's Statement on Plaintiff's ability to work.  Dr. Grappin indicated that Plaintiff "cannot do any work, including light sedentary work," "cannot do any work for which his/her skills or special training would qualify him/her" and was "unable to work at this time."  Dr. Grappin concluded that Plaintiff had been disabled since December 6, 2002 and would "never" be able to return to work (R. 67).

On August 12, 2004, Abdullah Raffee, M.D., examined Plaintiff at the request of the State Agency (R. 69-72).  Dr. Raffee observed Plaintiff walking without an assistive device and noticed that he moved quite easily from the chair to the examination table.  Dr. Raffee recognized that Plaintiff had a normal gait but Plaintiff reported having quite a bit of discomfort, especially when lying down (R. 71).  Dr. Raffee concluded that Plaintiff suffered from a closed head injury from his car accident, low back pain, left hip pain, uncontrolled hypertension and chronic obstructive pulmonary disease (R. 71-72).  Dr. Raffee believed Plaintiff had the current

3

ability to sit, stand, bend, stoop and carry up to twenty pounds (R. 73). The doctor also noted some limitation in range of motion of Plaintiff's neck, but found his other joints to be within normal limits (R. 75).

On August 16, 2004, Matthew P. Dickson, Ph.D. conducted a consultive psychological examination of Plaintiff. (R. 77-80). Dr. Dickson diagnosed an amnestic disorder due to head trauma, with a global assessment of functioning (GAF) of 56 (R. 80).[1] Dr. Dickson opined that Plaintiff's psychological condition would moderately impair Plaintiff's performance of work-related activities (*Id.*).

On August 24, 2006, Rosamma Nidhiry, M.D., reviewed Plaintiff's claim file and found that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently (R. 82). Dr. Nidhiry concluded that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds (R. 83). Dr. Nidhiry also found that Plaintiff needed to avoid concentrated exposure to humidity and to avoid all exposure to fumes, odors, dusts and gases as well as hazards such as machinery and heights (R. 85).

---

[1]The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id.* A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

On September 4, 2004, state agency psychologist Leonard Balunas, Ph.D., reviewed the record and concluded that Plaintiff could perform unskilled work (R. 96-109). Dr. Balunas opined that Plaintiff had moderate restrictions in his activities of daily living and moderate difficulties in his ability to maintain concentration, persistence or pace (R. 106). Dr. Balunas found that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions and respond appropriately to changes in the work setting (R. 91-92). Plaintiff was not significantly limited in other aspects of mental work-related activities (R. 91-92).

On August 19, 2004, Plaintiff's physician, H. Nims, D.O., noted that Plaintiff was taking Lortab, Soma and Restoril for pain (R. 113). Plaintiff continued to have prescriptions for pain medication re-filled monthly through September 2005 (R. 110).

**3.      Vocational Evidence**

VE Melody Henry appeared at Plaintiff's administrative hearing. The ALJ asked VE Henry to consider a person of Plaintiff's age, education and work experience who was able to perform light work in a well-controlled environment with no exposure to extreme temperatures or humidity; no exposure in confined spaces to dust, odors, fumes or gases; no climbing ropes, ladders or scaffolds; no exposure to unprotected heights or unguarded hazardous machinery; simple routine tasks in a low-stress environment with minimal changes in the workplace setting (R. 138). Ms. Henry responded that such an individual could perform general office clerk positions (9,475 regionally), records clerk jobs (1,070 regionally) and a stock clerk position (2,685 regionally) (R. 138).

The ALJ next asked Ms. Henry to consider an individual with these same restrictions, but

with the added difficulty that as a result of pain, medication required for pain, and fatigue secondary to loss of sleep as a result of pain that individual could not sustain sufficient concentration, persistence and pace to do even simple routine tasks on a regular and continuing basis for eight hours a day, five days a week.  Ms. Henry responded that such an individual would be precluded from work (R. 139).

**4.    ALJ Christensen's Decision**

ALJ Christensen found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in substantial gainful activity since she allegedly became disabled (R. 18).  He found that Plaintiff's history of status post closed head injury, chronic obstructive pulmonary disease, hypertension, lower back pain and left hip pain were "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 18-19).

ALJ Christensen determined that Plaintiff had a residual functional capacity (RPC) to perform light work in a well controlled environment with no exposure in confined spaces to odors, dust or fumes, with no work in humid environment or at extreme temperatures, with no climbing of ropes, ladders, scaffolds, performing simple routine tasks in a low stress environment (meaning minimal changes in workplace settings) with no exposure to unprotected heights or unguarded hazardous machinery (R. 19).

In assessing Plaintiff's RFC, ALJ Christensen found the Plaintiff's allegations as to the intensity, persistence and limiting effects of his symptoms were not entirely credible (R. 19). Specifically, ALJ Christensen noted that Plaintiff has required only routine treatment for his

impairments, and at the time of the hearing appeared to have a selective memory for only those things that were helpful to his claim (R. 19-20). Accordingly, ALJ Christensen determined that Plaintiff has mild limitations with respect to activities of daily living and social functioning with moderate limitations with respect to maintaining concentration, persistence or pace with no repeated episodes of de-compensation for extended durations (R. 20).

ALJ Christensen concluded that Plaintiff did not retain the RFC to return to his past employment of automobile assembler, but did find that a significant number of jobs existed in the national economy as identified by the VE that he could perform (R. 20-21). Thus, he was not disabled within the meaning of the Social Security Act (R. 21).

**II.    Analysis**

    **A.    Standards of Review**

Plaintiff must establish that he became disabled under Title II of the Act prior to the her insured status expires. *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2)*; Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do his previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering his age, education, and work experience. *See id.* § 423(d)(2)(A).
In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by

substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).   The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  *Id*.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.  *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

> If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779

(6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B. Factual Analysis

In his motion for summary judgment, Plaintiff argued that (1) ALJ Christensen failed to give proper weight to the opinions and assessments made by the Plaintiff's treating physicians; and (2) The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert (Dkt. # 8).

### I. Plaintiff's Treating Physician

Plaintiff insists that ALJ Christensen erred by failing to give controlling weight to his treating physician's opinion regarding the limitations Plaintiff's ailments impose on his ability to work. (Dkt. #8, p. 14). It is well established that the findings and opinions of treating physicians are entitled to substantial weight. An ALJ can reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987). Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will

only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p. Yet, the determination of a claimant's RFC and the conclusion of whether a claimant is "disabled" are decisions reserved to the Commissioner to decide. 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2). And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3).

On June 3, 2003, Dr. Brian Grappin opined that Plaintiff "cannot do any work, including light sedentary work," "cannot do any work for which is/her skills or special training qualify him/her" and "cannot do his/her regular job." Dr. Grappin concluded that Plaintiff has been disabled since December 6, 2002 and "NEVER" will be able to return to work (R. 67). Plaintiff contends that the ALJ was required to give these opinions controlling weight.

These opinions relate solely to Plaintiff's RFC and whether he is disabled, not the nature and severity of his ailments. For example, Dr. Grappin did not opine on the level of pain Plaintiff experiences, the weight Plaintiff can lift, or the period of time Plaintiff can sit. The issues in Dr. Grappin's opinions are therefore administrative decisions that are reserved for the Commissioner and are entitled to no special significance. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. ) (finding that the ALJ properly rejected treating physician's opinion on disability).

Dr. Grappin's opinions also are not supported by any detailed, clinical, diagnostic evidence in his report. Rather, the report is a one-page form with several brief handwritten notes indicating the mere conclusion about Plaintiff's ability to engage in future work. Absent clinical support for these conclusions, Dr. Grappin's opinions are not entitled to controlling weight. *See*

*Walters v. Commissioner of Social Security,* 127 F.3d 525, 530 (6th Cir. 1997) (noting that treating physician's opinion was properly rejected because report did not contain any clinical diagnostic evidence to support he opinion) *Houston v. Secretary of Health and Human Services*, 736 F. 2d 365, 367 (6th Cir. 1984) (holding that a "brief conclusory letter from [claimant's] treating physician was not dispositive of the [disability] issue").

The Sixth Circuit observed in *Bass* that while an ALJ will not give controlling weight to a treating physician's opinions on ultimate issues, an ALJ must still explain the consideration given to that source. 499 F.3d at 511. Yet, Dr. Grappin does not even qualify as a treating physician entitled to special treatment under current regulations. In *Walters,* 127 F. 3d at 530, the Sixth Circuit, while affirming the denial of disability benefits, held that a chiropractor does not qualify as a "medical source" within the meaning of 20 C.F.R. §404.1527(d)(2). The court noted: "The controlling weight provision is found under a section heading that refers specifically to medical opinions, and in the regulations chiropractor opinions are not listed as one of the five types of "acceptable medical sources" but are instead listed under the separate heading of "other [non-medical] sources." *Id.; see also* 20 C.F.R. §404.1513 (a) & (e). As in *Walters*, Dr. Grappin is a chiropractor whose opinions do not fall under 20 C.F.R. §404.1527(d)(2). The ALJ did not err by failing to give Dr. Grappin's opinions any weight.

### ii. Hypothetical Question posed to Vocation Expert

Plaintiff also contends ALJ Christensen did not present the VE with an accurate hypothetical question because he failed to sufficiently account for Plaintiff's "moderate" difficulties in maintaining concentration, persistence and pace. Plaintiff argues that based on *Bankston v. Commissioner of Soc. Sec.*, 127 F. Supp.2d 820 (E.D. Mich. 2000), an ALJ errs by

failing to account for the impact of a "moderate" concentration deficiency on the Plaintiff's employability. (Dkt. #8, p. 11).

Under the previously used evaluative scale, deficiencies in concentration, and other areas, were rated on a five-level range of frequency: never, seldom, often, frequent and constant. C.F.R. 404.1520a(c)(4) has since been amended to encompass a five-level scale based on severity rather than frequency of the limitation. The current scale rates severity as none, mild, moderate, marked and extreme. Plaintiff contends a finding of "moderately limited" is equivalent to "often," and that courts like *Bankston* have found individuals with such a limitation to be disabled.

In *Bankston*, the Court noted that it was reasonable to conclude under the regulations "that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." *Id.* at 826. The Court then determined that under the relevant portion of the PRTF, "often" should logically be defined as fifty percent of the time. *Id.* at 827. There, the finding that the claimant "often" had deficiencies of concentration, paired with the uncontested findings of the treating physician that he was disabled, resulted in a judgment of disability and a remand for award of benefits.[2]

Yet, the Sixth Circuit has since held that an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for

---

[2] The correctness of the *Bankston* decision under the previous regulation defining "often" as 50% has been questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an administrative agency's construction of its own regulations so frequently noted since *Udall v. Tallman,* 380 U.S. 1, 16-17 (1965). *See* Report and Recommendation accepted by Chief Judge Rice in *Ogden v. Apfel,* Case No. c-3-00448 (S.D. Ohio June 11, 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations).

remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). In *Smith*, the ALJ marked on the PRTF that Smith "often" suffered deficiencies of concentration, persistence or pace, but did not include that finding in the hypothetical question to the VE. Smith, relying on cases similar to *Bankston*, argued for a remand based on that omission. The Sixth Circuit, without citing *Bankston*, held that the hypothetical question asked by the ALJ was adequate. The court noted that while the ALJ checked a single box for "often" in a 1-5 rating scale on the PRTF,

> the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment . . . . In particular, the ALJ relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible. The ALJ then translated Smith's condition into the only concrete restrictions available to him – examining psychiatrist Schweid's recommended restrictions against quotas, complexity, stress, etc. – and duly incorporated them into his hypothetical to the vocational expert.

*Id.* at 379.

The Court distinguished several unpublished district court cases similar to Bankston because the ALJ's in those cases did not include in the hypothetical question the finding that the claimant "often" had difficulty concentrating, nor did they otherwise account for such a limitation. Id. Thus, when the ALJ makes a finding that the claimant "often" has problems with concentration, but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's concentration limitations.

A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms. While the ALJ is not required provide a

verbatim recitation of the medical findings, the hypothetical question must adequately reflect those limitations. One court has held that a reference merely to "unskilled sedentary work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies. *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996); *McGuire v. Apfel*, 1999 WL 426035, at *15 (D. Ore. 1999). This Court in *Bielat v. Comm'r of Soc. Sec.*, No. 02-70791 (E.D. Mich. Apr. 4, 2003) (quoting *Andrews v. Comm'r of Soc. Sec.*, No. 00-75522 (E.D. Mich. Dec. 18, 2001) and citing *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996)), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in ability to concentrate or persist at tasks. *See Andrews v. Comm'r of Soc. Sec'y*, No 00-75552 (E.D. Mich, Dec.18, 2001) (finding that "difficulties in concentration" in a hypothetical question was insufficient to describe someone who has "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner . . .often."); *see also*, *Walker v Barnhart*, 258 F.Supp.2d 293 (E.D. Mich. 2003) (holding that the ALJ's hypothetical question to the VE that the claimant could perform only simple, unskilled work did not necessarily take into account the non-exertional limitations imposed by Plaintiff's depressive disorder).

*Smith* found that a hypothetical question that took into consideration "quotas, complexity, stress" was adequate in a case where the record also contained four physicians who characterized Smith's concentration problems as minimal or negligible. Here Plaintiff was found to have "moderate limitations with respect to concentration, persistence or pace." No one has characterized his concentration problems as minimal or negligible as in *Smith.* Rather the state psychological evaluator, Dr. Balunmas, diagnosed memory impairment under Listing 12.02 (R.

14

97), and the other state examiner, Dr. Dickson, diagnosed an amnestic disorder due to head trauma (R. 80). While his primary care has been for his physical impairments, his memory problems are noted in his medical history well after his December 2002 closed head injury. (See *e.g.* May 27, 2004, "Still having memory problems (R 116); June 22, 2004 "memory problems".[3]) ALJ Christensen specifically found Plaintiff has "moderate limitations with respect to maintaining concentration, persistence or pace" (R. 20).

There seem to be two components to having problems in concentration - whether characterized as being "often" or "moderate." One deals with the frequency of how often one cannot concentrate. The other deals with the level of sophistication or intensity of the work that can be done with the concentration limitation. The first hypothetical question the ALJ asked VE Henry encompasses to some extent the later effects of concentration problems by limiting the hypothetical worker to simple, routine work with limited stress. But it does not seem to specifically address the frequency of how often that worker would be unable to concentrate. The second hypothetical question to Ms. Henry, in contrast, addressed a situation in which in which an individual could not sustain sufficient concentration, persistence and pace to do even simple routine tasks on a regular and continuing basis for eight hours a day, five days a week.

Plaintiff's moderate difficulty concentrating for prolonged periods seems to fall between the extremes bracketed by the ALJ's two hypothetical questions – more difficulties in concentrating than appear in the first hypothetical, but less severe limitations than in the second hypothetical. In relying on the VE's response to the first hypothetical to support his decision,

---

[3] The date indicates "06/22/01", which was prior to his accident, and this entry is in a series of 2004 medical entries, including a clearly marked "6/22/04" entry on the same page. Thus it is assumed to be 2004, not 2001.

15

the ALJ failed to account for the moderate difficulties Plaintiff experiences with concentration, persistence and pace and obtain evidence on the impact those moderate difficulties would have on the jobs available for Plaintiff in the workplace.  Xxx

"Moderate" concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at Step 3 of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence, and the inclusion in the hypothetical of simple, routine jobs with a low stress level alone is not sufficient.  On the present record we do not know how many of the various clerking jobs the VE testified about in response to the first hypothetical would be eliminated if Plaintiff's moderate concentration problems were more fully represented in the ALJ's question to the VE.  Further development of the record is required in order to determine the extent of the effect of Plaintiff's concentration and memory limitations.

*Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), held that after finding reversible error it is appropriate for this Court to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher citing Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case "all essential factual issues" have been not been resolved with regard to impact of Plaintiff's concentration limitations on his vocational capacity. In *Bielat*, this Court remanded for an award of benefits where on cross examination Bielat's counsel got the VE to

admit that all jobs would be eliminated if frequent deficiencies of concentration, persistence or pace were found, but in that case, the ALJ had found the Bielat had "marked" limitations in concentration – more severe than "moderate" on the Commissioner's scale which is involved here. Thus, that case represented a stronger case for a remand for benefits.

Nor is the current case one where "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Accordingly, a remand for further administrative proceedings consistent with this Report and Recommendation is necessary.

### IV.     Recommendation

For the reasons stated above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED** and that Plaintiff's Motion for Summary Judgment be **GRANTED** with the requested remand for further administrative proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 28 , 2009                   s/Steven D. Pepe
Ann Arbor, Michigan               United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 28, 2009.

                                                   s/Deadrea Eldridge
                                                   Generalist Deputy Clerk